<u>FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ROYAL & SUN ALLIANCE INSURANCE PLC,

    Plaintiff,

    -v-                           No.  09 Civ. 5935 (LTS)(AJP)

UPS SUPPLY CHAIN SOLUTIONS, INC. <u>et</u> <u>al.</u>,

    Defendants.

----------------------------------------------------------x


### MEMORANDUM OPINION AND ORDER


APPEARANCES:


MALOOF BROWNE & EAGAN LLC
  By:  David Thomas Maloof, Esq.
      Thomas Mark Eagan, Esq.
      Jacqueline M. James, Esq.
411 Theodore Fremd Avenue
Suite 190
Rye, NY 10580

*Attorneys for Plaintiff*

DeORCHIS & PARTNERS, LLP
  By:  Vincent M. DeOrchis, Esq.
61 Broadway
Suite 1900
New York, NY 10006

*Attorney for Defendants*


LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

Plaintiff Royal & Sun Alliance Insurance PLC ("RSA" or "Plaintiff") brings this action against UPS Supply Chain Solutions, Inc. ("UPS"), Worldwide Dedicated Services, Inc. ("WDS"), International Management Services Company, Inc. ("IMSCo"), and TFE Logistics Group, Inc. f/k/a/ The TFE Group, Inc. ("TFE") (collectively, "Defendants").  In its Second Amended Complaint, Plaintiff asserts statutory claims under the Carmack Amendment, 49 U.S.C. § 14706, as well as common law claims for breach of bailment duties and negligence against each of the four defendants.  In its memorandum of law in support of the instant motion for summary judgment, Plaintiff withdraws the common law claims as against defendants UPS and WDS.  The Court has jurisdiction of the statutory claims pursuant to 28 U.S.C. § 1331 and the common law claims pursuant to 28 U.S.C. § 1367.

RSA has moved for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking determinations that (a) UPS is liable to Plaintiff for $250,000 under the relevant shipping agreement; (b) WDS' liability to Plaintiff is not limited by that agreement; and (c) IMSCo's liability to Plaintiff is not limited by that agreement.  In their response to the motion, Defendants argue that the collective liability of the three defendants is, at most, $250,000, that Plaintiff's motion should be denied and summary judgment granted in favor of either UPS or WDS and in favor of IMSCo, and that Defendants should be awarded attorneys' fees incurred in connection with the withdrawal and reinstatement of Plaintiff's motion.  The Court has reviewed thoroughly all of the parties' submissions and, for the reasons explained below, Plaintiff's motion for partial summary judgment is granted in part and denied in part, summary judgment is granted in favor of WDS, and Defendants' request for attorneys' fees is denied.

<u>Background</u>

The following material facts are undisputed, except where noted.  Ethicon is a pharmaceutical products company that was insured by RSA.  (James Decl., Ex. 3, 1.)  On or about May 24, 2008, Ethicon and UPS entered into an ongoing freight forwarding contract, referred to as the "Logistics Service Agreement" ("LSA").  (Pl.'s 56.1 St. ¶ 1.)[1]  The LSA provides that UPS "or its designated affiliate" would provide shipping services as described in the agreement.  (James Decl., Ex. 1A, 000021.)  The LSA limits UPS' liability for "loss or damage" during inland or air transportation to "$250,000 per shipment for finished Goods shipment and $100,000 per shipment for all other shipments."  (Pl.'s 56.1 St.  ¶¶ 6, 7.)  In Addendum No. 1 ("Addendum") to the LSA, WDS, a wholly-owned subsidiary of UPS, was specified as a "designated affiliate of [UPS]" that would provide "Dedicated Transportation Services" for Ethicon under the LSA. (James Decl., Ex. 1B, UPS 65, UPS 68.)

WDS subsequently entered into a Staffing Services Agreement ("SSA") with IMSCo.[2]  (Pl.'s 56.1 St. ¶ 13.)  According to the SSA, IMSCo was to "provide to WDS the number of employees to operate the motor vehicles owned or leased by WDS as required by WDS."  (James Decl., Ex. 2, 1.)  The SSA further provided that "[t]he parties intend to create an independent contractor relationship, and nothing contained in this Agreement shall be construed to make either WDS or [IMSCo] partners, joint venturers, principals, agents or employees of the

---

[1]     Citations to the Plaintiff's Local Civil Rule 56.1 statements incorporate by reference citations to the underlying evidentiary submissions.

[2]     TFE is a subsidiary of IMSCo and the term "IMSCo" will hereinafter be used to refer to both defendants.

other." (James Decl., Ex. 2, 3.)  WDS agreed to procure two million dollars in liability insurance

covering each vehicle operated by an IMSCo driver, and to indemnify IMSCo for liabilities

excluded from, or in excess of, the insurance coverage.  (Pl.'s 56.1 St. ¶ 16; James Decl. Ex.2,

000001, 000003, 000006.)

On or about March 26, 2009, Ethicon shipped a consignment of pharmaceutical

products via UPS and WDS.  (Pl.'s 56.1 St. ¶2.)  The driver of the truck was provided by IMSCo.

(Id. ¶ 4.)  On March 26, 2009, there was an accident in which the truck left the Arkansas I-30

highway, struck a concrete barrier and caught fire.  (Id. ¶ 3.)  The cause of the accident is

disputed.  (Defs.' 56.1 Counter-St. ¶ 2.)  According to Ethicon's survey report, at least 9 of the

22 parcels identified to the shipment were damaged physically and all were exposed to smoke.

(Gill Decl., Ex. I.)  RSA has proffered the declaration of Steve Chrysler, Ethicon's Distribution

& US Customs Compliance Manager, in which Chrysler asserts based on Ethicon records that the

shipment in question consisted of medical devices and surgical sutures shipped in good order and

condition, including finished products with a value of $769,726.08.  The Chrysler declaration is

accompanied by invoices, bills of lading and copy of a portion of an April 24, 2009, report by

Ethicon's Quality Assurance Manager stating that Ethicon management had decided, based on

factors including circumstances and temperatures generated by the accident and the nature and

purpose of the products in the shipment, "that product functionality, safety, and efficacy cannot

be ensured by any method and the that the product must be destroyed without inspection."

(Chrysler Decl., Ex. D, 28.)[3]

---

[3]     Defendants proffer no contrary evidence as to the content, value or ultimate
condition of the shipment but argue that Chrysler's affidavit is overly conclusory
and insufficient to provide the requisite business records foundation for the

RSA paid Ethicon $769,726.38 for its losses incurred on the shipment and sues here as Ethicon's subrogee.  (James Decl., Ex. 3, 1.)

<u>DISCUSSION</u>

Summary judgment is to be granted in favor of a moving party where the "pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The moving party bears the burden of establishing that there is no genuine issue of material fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  A fact is considered material "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Holtz v. Rockefeller & Co. Inc.</u>, 258 F.3d 62, 69 (2d Cir. 2001) (quoting <u>Anderson</u>, 477 U.S. at 248).  The Second Circuit has explained, however, that "[t]he party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)).

*Motion for Partial Summary Judgment Regarding UPS Liability*

The Carmack Amendment imposes strict liability "for the actual loss or injury to the property caused by . . . the delivering carrier" unless the amount is limited by the parties'

---

accompanying documents.  The Court finds the proffer sufficient to support Plaintiff's factual contention that it suffered a loss in excess of $250,000 on finished goods.

contract.  49 U.S.C. § 14706.  While UPS and WDS are motor carriers within the coverage of the statute, IMSCo is not.  See 49 U.S.C. §§ 13501, 14706; Defs.' 56.1 ¶17.

Covered motor carriers are permitted to limit their liability in contracts with the consumers of their services.  See 49 U.S.C. § 14706(c)(1)(A); Adams Express Co v. Croninger, 226 U.S. 491, 508 (1913) (holding that there is an "established rule of the common law" that "a carrier may, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value . . .").  The parties agree that the express terms of the LSA limit UPS' liability for finished goods to $250,000.  Plaintiff asserts that it only seeks damages for the cost of the damaged finished goods.  Defendants have not proffered any evidence to controvert Plaintiff's contention that its loss with respect to finished goods exceeded that amount.[4]

*Motion for Partial Summary Judgment Regarding UPS and WDS Liability*

UPS concedes that there is liability under the LSA to the extent losses of finished goods are established, of up to $250,000.  The crux of the parties' dispute as to the Carmack Amendment claim against UPS and WDS is as to whether Plaintiff is entitled to recover against both UPS and WDS and whether, if it is entitled to recover separately against each of these defendants, the liability limitation of the LSA applies to the claim against WDS.  RSA asserts

---

[4]    The court has reviewed thoroughly the Defendants' objections pursuant to Federal Rule of Evidence 803(6) and find them to be without merit.  The documents in question were regularly maintained business records by individuals with knowledge of the business practice in question (See Chrysler Decl. ¶¶ 6-8) and thus are not hearsay.  See Phoenix Associates III v. Stone, 60 F.3d 95, 101 (2d Cir. 1995) (favoring admission of evidence with any probative value and requiring only sufficient knowledge of the business practices to be a custodian or other qualified witness under Federal Rule of Evidence 803(6) where documents are maintained in the course of regular business activity).  See also supra note 3.

that WDS is not covered by the limitation liability terms of LSA, or that there is at least ambiguity as to whether the WDS addendum is a separate contract with a lack of liability limitation.  The Court must interpret both documents to ascertain the extent of UPS and WDS liability.

Under New York law, "the initial interpretation of a contract is a matter of law for the court to decide."  K. Bell & Assoc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous."  Alexander & Alexander Serv., Inc. v. Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998).  Contract terms are ambiguous if they suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997).  When a contract is not ambiguous, the court "should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence."  Alexander & Alexander, 136 F.3d at 86.

The Court finds that the terms of the LSA and the Addendum are not ambiguous as to WDS' coverage under the LSA.  The agreement provides for services thereunder by either UPS or their "designated affiliate."  The LSA's terms specify the liability of UPS for the services performed, unless UPS arranges for performance of the services by a third party carrier, in which case such third party carrier would perform under a separate agreement and be liable. None of the documents proffered classify WDS as a separate "third party."  On the contrary, the Addendum explicitly characterizes WDS as a "designated affiliate," thus clearly evidencing the intent that

the services would be governed by the LSA as services performed by UPS.  The Addendum

further evidences this intent by reciting that it is "incorporated into the [LSA] and upon execution

by the parties shall become part of the entire Agreement." (James Decl., Ex. 1B, UPS 68.)

As there is no ambiguity as to the coverage of services provided by WDS as UPS'

designated affiliate, the Court applies the plain and ordinary meaning of the LSA liability clause:

UPS as "Seller" is liable to Plaintiff under section 10 of the LSA.  Plaintiff has shown no legal

basis for additional, separate liability of WDS.  Since Plaintiff has proffered uncontroverted

evidence of a finished goods loss in excess of $250,000, Plaintiff is entitled as a matter of law to

judgment against UPS for $250,000.  Plaintiff's motion for partial summary judgment as to WDS

is denied and judgment is granted as a matter of law dismissing the Carmack Amendment claim

against WDS.

*Motion for Partial Summary Judgment Regarding IMSCo Liability*

RSA seeks a declaration that the liability limitation provision of the LSA does not

protect IMSCo, an independent contractor, in connection with WDS' provision of motor carrier

services.  Defendants oppose the application and cite several district court decisions from Texas

and one California state appellate decision which apply to Carmack Amendment motor carriers

the liability limitation that is extended to air carriers' agents under the Convention for the

Unification of Certain Rules Relating to International Carriage by Air, Oct. 12, 1929, 49 Stat.

3000, 478 U.N.T.S. 371 ("Warsaw Convention").  Based on these decisions, the Defendants

argue that the Carmack Amendment liability limitations should be read to protect persons not

specified in contractual liability limitation clauses but who nonetheless perform services integral

to the provision of motor carriage to which the limitation clauses apply.  See Conti-Harding v.

Eden Relocation, No. 6:06-CV-27, 2007 WL 1136092, *5-6 (E.D. Tex. April 16, 2007) (applying Warsaw Convention airline liability precedents in deciding that limitation of liability contracted for by a general motor carrier extended to its subcontractor); Hyundai Corporation v. Contractors Cargo Co., No. H-07-2625, 2008 WL 4178188, *6-7 (S.D. Tex. September 05, 2008) (holding that "specific clause[s] extending liability limitation" were not necessary under the Carmack Amendment and extending contractor's liability limitation for damaged goods to subcontracting carrier); Dictor v. David & Simon, Inc. 106 Cal. App. 4th 238, 255 (Cal. Ct. App. 2003) (relying on Warsaw Convention coverage principles to extend the contracting carrier's liability limitation provisions to a subcontractor "performing services incidental to carriage.").

       The Second Circuit has long interpreted the language of the Warsaw Convention to extend air carrier liability limitations to air carriers' employees and contractors.  See, e.g., Reed v. Wiser, 555 F.2d 1079, 1089 (2d Cir. 1977) (employees); Waxman v. C.I.S. Mexicana De Aviacion, S.A. De C.V., 13 F. Supp. 2d 508 (S.D.N.Y. 1998) (subcontractors).  The more recent Montreal Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45 ("Montreal Convention") explicitly allows for the extension of absolute liability limitations to the agents and subcontractors of air carriers.  Article 30 of the Montreal Convention "clarifies that servants or agents may avail themselves of the same conditions and liability limitations to which the carrier is entitled under the Convention, if they prove that they were acting within the scope of their employment."  In contrast, the language of the Carmack Amendment refers exclusively to carriers, and agency liability is not addressed at all.  See 49 U.S.C. § 14706.

       The Second Circuit has not applied Warsaw Convention coverage principles to

Carmack Amendment liability limitation contracts, and this Court declines to do so.  The language and liability mechanisms of the Warsaw Convention and the Montreal Convention are significantly different from the language and liability limitation provisions of the Carmack Amendment.

        The Warsaw Convention is an international agreement that sets absolute caps on certain air carrier liability in connection with air travel.  See Warsaw Convention art. 22 ("[L]iability of the carrier for each passenger shall be limited to the sum of 125,000 francs" for transportation of passengers and "liability of the carrier shall be limited to a sum of 250 francs per kilogram" for checked baggage).  The limitation exists by operation of law rather than by individual contract.  Id.  The Montreal Convention similarly creates absolute liability limits for air carriers.  Montreal Convention art. 22 (setting a "4,150 SDR (approximately $5,600) limit on the liability of the carrier for damages caused by delay in the carriage of passengers" and "1,000 SDR per passenger (approximately $1,350)" for loss, destroyed or delayed baggage).

        In contrast, the liability mechanism of the Carmack Amendment imposes strict, unlimited liability on motor carriers but permits limitation of their liability through contractual arrangements.  See 49 U.S.C.A. § 14706 (stating that motor carriers may "establish rates . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.").  The statute imposes disclosure requirements that are intended to insure informed decision making on the part of the shippers who are accepting the lower liability limits provided for under the contracts.  Extension of contracted-for liability to all agents and

subcontractors can be negotiated under the statute where deemed necessary by the parties.  See

Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 20 (2004) (recognizing a "Himalaya

Clause" as a way for parties to ensure that "other downstream parties [that] expected to take part

in the contract's execution could benefit from the liability limitations.").

   Since the liability limitation mechanism of the Carmack Amendment depends on

individualized liability provisions as to both motor carriers and their agents, the court must look

to the terms of the applicable contract to determine which parties are entitled to liability

limitation.  Motor carrier contracts are read narrowly and coverage is extended to non-named

parties only insofar as they are demonstrated to be intended third party beneficiaries rather than

merely incidental beneficiaries.

> Under the Carmack Amendment, shipping 'contracts purporting to
> grant immunity from, or limitation of, liability must be strictly
> construed and limited to intended beneficiaries, for they are not to
> be applied to alter familiar rules visiting liability upon a tortfeasor
> for the consequences of his negligence, unless the clarity of the
> language used expresses such to be the understanding of the
> contracting parties.'  See Toyomenka, Inc. v. S.S. Tosaharu Maru,
> 523 F.2d 518, 521 (2d Cir. 1975) ('Such a limitation of common
> law liability . . .  must be clearly expressed.  A bill of lading
> containing such a limitation will be strictly construed against the
> parties whom it is claimed to benefit.') (citing Herd & Co. v.
> Krawill Machinery Corp., 359 U.S. 297, 305 (1959)).

St. Paul Fire and Marine Ins. Co. v. Schneider Nat. Carriers, Inc., No. 03 Civ. 5197

(RMB), 2006 WL 522455, *7 (S.D.N.Y. March 03, 2006).

   Nothing in the LSA suggests that IMSCo was an intended beneficiary of the

liability limitations of that agreement.  The terms of the LSA limit its application to the "Seller"

(which is further defined as UPS or its designated affiliate).  There is no indication of an intent to

benefit any entity other than UPS or its affiliates, much less any mention of IMSCo or any other independent service provider.  Although UPS and WDS argue that their contract with IMSCo, through its indemnity provision, ultimately places the burden of any higher liability on UPS and would thus defeat the purpose of the limitation insofar as it is intended to benefit UPS unless it were deemed to cover IMSCo as well, there is no evidence that Plaintiff's subrogor had any knowledge of the IMSCo arrangement or of the indemnity provision.  The parties did not choose expansive language, such as a Himalaya Clause, that would have extended the liability limitations to IMSCo.  The record is entirely devoid of any factual basis for an inference of the requisite bilateral intent to cover an independent contractor such as IMSCo.  Accordingly, IMSCo is not entitled to the protection of the liability limitation clause of the LSA.  The motion for partial summary judgment is therefore granted as against IMSCo.

Conclusion

For the foregoing reasons, RSA's motion for partial summary judgment is granted insofar as UPS is hereby declared to be liable to RSA for $250,000 of the loss at issue in this litigation; RSA's motion for summary judgment is denied as to the liability of WDS, and summary judgment is granted dismissing the Carmack Amendment claim against WDS; and RSA's motion for partial summary judgment against IMSCo and TFE is granted insofar as the Court hereby determines that the liability limitation provision of the LSA is not applicable to any liability of IMSCo or TFE in connection with the transportation accident.  In accordance with RSA's representations on page 9, note 3 of its brief in support of the instant motion, RSA's bailment and tort causes of action are voluntarily withdrawn, with prejudice, as against defendants UPS and WDS.

To the extent Defendants suggest that summary judgment should be granted in their favor with respect to any other element of the Second Amended Complaint that invitation is declined. The Court similarly declines to exercise its inherent power to award attorneys' fees to Defendants in connection with this motion practice; in that regard, the Court notes that its Individual Practices Rule 2B, if properly complied with prior to the initial motion practice, should have put Plaintiff on notice of the arguments that Defendants would make in opposition to the summary judgment motion, thus any prejudice that Defendants may perceive they have suffered in having to meet anticipatory arguments on the second round of motion papers cannot be laid solely to "sharp practices" on Plaintiff's part.

This memorandum opinion and order resolves docket entry no. 38.

The parties are directed to meet with Magistrate Judge Peck promptly for settlement purposes. A final pre-trial conference in this matter will be held before the undersigned on **Friday, October 29, 2010 at 2:00 p.m.**

SO ORDERED.

Dated: New York, New York
     July 23, 2010

LAURA TAYLOR SWAIN
United States District Judge