UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
ROYAL & SUN ALLIANCE
INSURANCE PLC,

          **Plaintiff,**

        - against -

UPS SUPPLY CHAIN SOLUTIONS, INC.,
WORLDWIDE DEDICATED SERVICES, INC.,
and INTERNATIONAL MANAGEMENT
SERVICES COMPANY, INC.,

          **Defendants.**
------------------------------------------------------------

09 C 5935
MEMORANDUM OPINION AND
ORDER DENYING MOTION TO
BIFURCATE

**MARVIN E. ASPEN**, United States District Judge:

    Presently before is a motion for bifurcation filed by Defendant International Management Services Company, Inc. ("IMSCO") (Dkt. Nos. 164–65). IMSCO seeks to initially limit the scope of trial to address whether it is entitled, under the federal common law of bailment, to the limited liability provision agreed-upon between Ethicon, and its bailee, UPS Supply Chain Solutions, Inc. ("UPS"). Plaintiff Royal & Sun Alliance Insurance PLC ("Royal Sun"), Ethicon's insurer, objects to the motion on multiple grounds. As set forth below, the motion is denied.

### BACKGROUND[1]

    Although the pending motion is styled as a Rule 42 motion for bifurcation, the parties' briefs hardly touch on the appropriateness of bifurcating the upcoming bench trial. Instead, the parties dispute whether the issue IMSCO seeks to try separately should in fact be tried at all.

    IMSCO asserts that, as a sub-bailee under common law, it may claim a liability limitation

---

[1] We presume familiarity with the nature of the dispute and the underlying record.

based on the terms of the Logistics Services Agreement ("LSA") entered into between Ethicon and UPS. The LSA limited UPS' liability, as bailee, to $250,000 in the event of loss or damages to the cargo transported for Ethicon. UPS contracted with IMSCO pursuant to a Staffing Services Agreement ("SSA") to provide drivers for transportation of cargo.[2] An IMSCO truck driver, James Crews, was involved in the March 2009 crash that destroyed the Ethicon cargo and led to this suit. UPS has already paid Royal Sun $250,000 pursuant to the limitation in the LSA for the loss of the cargo. IMSCO claims that, as Ethicon's sub-bailee, its potential liability is also subject to the $250,000 limitation. Moreover, because UPS satisfied that obligation, IMSCO asserts that its liability must be zero. (Mem. at 1–4.) IMSCO argues that this issue should be bifurcated for a short trial prior to any trial on liability, should that become necessary.

      Royal Sun objects to the motion on the grounds that IMSCO cannot seek limited liability as a subcontractor, for a variety of legal reasons. Royal Sun contends that IMSCO impermissibly seeks reconsideration of Judge Swain's July 23, 2010 summary judgment order, running afoul of the law of the case doctrine as well as Local Rule 6.3. (Opp'n at 3–4, 7–8.) Royal Sun also argues that IMSCO is barred from raising this issue because it failed to argue it at the summary judgment stage and, moreover, entered into a damages stipulation that did not account for the liability limitation. (*Id*. at 4–7.) Finally, Royal Sun contends that IMSCO's claim to the limitation fails on its merits. (*Id*. at 9–12.) We need not address each of these arguments but will consider the merits of IMSCO's position and the related applicability of the law of the case doctrine.

---

      [2] UPS' subsidiary, Worldwide Dedicated Services, Inc. ("WDS"), executed the SSA with ISMCO.

## ANALYSIS

We begin with the essential backdrop underpinning IMSCO's theory. Generally speaking, a federal statute—the Carmack Amendment—imposes strict liability on motor carriers providing interstate transportation services "for the actual loss or injury to the property caused by . . . the delivering carrier." 49 U.S.C. § 14706(a)(1). The Carmack Amendment thus codified the long-standing federal common law principle that "a common carrier cannot exempt himself from liability," although "the rigor of this liability might be modified through any fair, reasonable, and just agreement with the shipper." *Adams Exp. Co. v. Croninger*, 226 U.S. 491, 509, 33 S. Ct. 148, 153 (1913); *see also Emerson Elec. Supply Co. v. Estes Exp. Lines Corp.*, 451 F.3d 179, 183 (3d Cir. 2006); *Shippers Nat'l Freight Claim Council v. I.C.C.*, 712 F.2d 740, 745–46 (2d Cir. 1983); *AIG Europe (Netherlands), N.V. v. UPS Supply Chain Solutions*, 765 F. Supp. 2d 472, 482 (S.D.N.Y. 2011). Under both common law and the Carmack Amendment, motor carriers can limit (though not escape) their potential liability through the express terms of their contracts with the cargo shippers retaining their services. 49 U.S.C. § 14706(c)(1)(A); *Croninger*, 226 U.S. at 509, 33 S. Ct. at 153; *see Royal & Sun Alliance Ins. PLC v. Rogers Transp. Mgmt. Servs., Inc.*, 737 F. Supp. 2d 154, 159 (S.D.N.Y. 2010) [hereinafter *Rogers*].

In addition, under certain circumstances liability limitations may apply to "downstream" third parties, including agents of the carrier or independent contractors retained by the carrier to assist with the transportation of the cargo. For example, the contract between a cargo shipper and the carrier may include sweeping limitation language—often referred to as a Himalaya clause—that covers unspecified contractors and additional bailees. *See Norfolk S. Rwy. Co. v. Kirby*, 543 U.S. 14, 20, 125 S. Ct. 385, 391 (2004) (noting that the relevant bills of lading

included Himalaya clauses, which covered "any servant, agent or other person (including any independent contractor) whose services have been used in order to perform the contract"); *American Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 317 & n.2 (2d Cir. 2006) (explaining that because the pertinent statute protected only the primary carrier but not its agents or others, "a Himalaya Clause is necessary to extend this limitation beyond its normal parameters"). Or, the contract between a carrier and its subcontractor may include language that limits the subcontractor's liability to the shipper, even though the shipper may be unaware of this downstream arrangement. *Norfolk S. Rwy. Co.*, 543 U.S. at 33–34, 125 S. Ct. at 398–99 (holding that "an intermediary binds a cargo owner to the liability limitations it negotiates with downstream carriers"); *see also Rogers*, 737 F. Supp. 2d at 160–61 (limiting subcontractor's damages to $250,000 pursuant to its contract with intermediary, even though subcontractor was deemed liable for the entire loss under the shipper–intermediary agreement). Determining the applicability of limited liability provisions is "a simple question of contract interpretation." *Norfolk S. Rwy. Co.*, 543 U.S. at 30, 125 S. Ct. at 397; *Toyomenka, Inc. v. S.S. Tosaharu Maru*, 523 F.3d 518, 522 (2d Cir. 1975) ("[E]ach case turns on the provisions of the particular bill of lading."); *see also Royal & Sun Alliance Ins. PLC v. UPS Supply Chain Solutions, Inc.*, No. 09 C 5935, 2010 WL 3000052, at *5 (S.D.N.Y. July 23, 2010) (evaluating applicable contract terms) [hereinafter *Royal Sun I*].

At the summary judgment stage, the parties agreed that IMSCO is not a "motor carrier" as defined by the Carmack Amendment. (*See* Defs.' Facts ¶ 15, Dkt. No. 31.) In her July 23, 2010 opinion, Judge Swain held that the limited liability provision included in the LSA, while valid under the Carmack Amendment as to UPS, did not insulate IMSCO as a downstream

independent contractor. *Royal Sun I*, 2010 WL 3000052, at *4–6. Judge Swain reasoned that "[e]xtension of contracted-for liability to all agents and subcontractors can be negotiated under the statute where deemed necessary by the parties." *Id.* at *5 (citing *Norfolk S. Rwy. Co.*, 543 U.S. at 20, 125 S. Ct. at 391). Here, however, the LSA does not include a Himalaya clause or other language evidencing Ethicon's and UPS' intent to limit the liability of anticipated third-party contractors. *Id.* at *6. (*See also* Bruce Lindsay 4/22/11Decl, Ex. A, LSA ¶ 10.) After interpreting the LSA, Judge Swain concluded that IMSCO was not an intended beneficiary of the limited liability clause and could not claim its benefit. *Royal Sun I*, 2010 WL 3000052, at *5–6.

Having been denied the LSA's protection in Judge Swain's Carmack Amendment analysis, IMSCO now argues that it is entitled to the liability limitation under principles of federal common law.[3] As Royal Sun correctly points out, IMSCO fails to recognize that the common law analysis of the applicability of the limitation is precisely the same as the statutory analysis previously conducted by Judge Swain. That is, the extension of the liability limitation to downstream carriers boils down to "a simple question of contract interpretation" under either the Carmack Amendment or common law principles. *Norfolk S. Rwy. Co.*, 543 U.S. at 30, 125 S. Ct. at 397; *see Rogers*, 737 F. Supp. 2d at 159–61 (evaluating plain language of the contracts to determine the applicability of the limitation under federal common law); *Royal Sun I*, 2010 WL 3000052, at *5–6 (reviewing LSA in overall context of Carmack Amendment, though having

---

[3] Royal Sun has not challenged IMSCO's reliance on federal common law. We deem this reliance appropriate because, as Judge Swain previously held, the claims against IMSCO fall outside the literal scope of the Carmack Amendment. *Rogers*, 737 F. Supp. 2d at n.31; *Ingram Micro, Inc. v. Airoute Cargo Exp., Inc.*, 154 F. Supp. 2d 834, 839 (S.D.N.Y. 2001) ("[C]ourts have held that federal common law is properly applied where the particular facts of a case may fall outside the literal coverage of a federal statute, but the use of common law will fill gaps in the congressional statutory pattern.").

found that IMSCO was not subject to the Carmack Amendment).  This approach makes sense because, as mentioned earlier, the Carmack Amendment adopted the common law principles that govern here.  *See Croninger*, 226 U.S. at 509, 33 S. Ct. at 153.

In light of the above, we find that IMSCO's argument is foreclosed by the law of the case doctrine.  IMSCO's common law theory requires us to evaluate the terms of the LSA, where Judge Swain previously did so and ruled on the LSA's applicability to IMSCO.  The Second Circuit has repeatedly stated that our discretion to revisit a non-final ruling is "subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'"  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.2d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Corp.*, 327 F.2d 944, 953 (2d Cir. 1964)); *Bergerson v. New York State Office of Mental Health*, No. 10 C 1040, 2011 WL 2899237, at *9 (2d Cir. July 21, 2011); *see also In re Ski Train Fire in Kaprun, Austria*, 224 F.R.D. 543, 546 (S.D.N.Y. 2004).  Reconsideration is appropriate only if "'there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *In re Ski Train Fire in Kaprun, Austria*, 224 F.R.D. at 546 (quoting *Color Tile, Inc.*, 322 F.3d at 167).  None of these circumstances are present here, and we are "understandably reluctant to reopen a ruling once made."  *Ali v. Mukasey*, 529 .3d 478, 490 (2d Cir. 2008) (quoting *Lillbask v. Conn. Dept. of Educ.*, 397 F.3d 77, 94 (2d Cir. 2005)) (adding that such reluctance is particularly warranted "when one judge . . . is asked to consider the ruling of a different judge").

Even if the law of the case doctrine did not apply, our analysis of the LSA would not stray from Judge Swain's earlier discussion and holding.  Indeed, IMSCO has not challenged Judge

Swain's interpretation of the LSA. Rather, IMSCO attempts to skirt the contract interpretation issue by claiming that the federal common law of bailment requires extension of the limitation. But again IMSCO ignores the fact that the source of any limitation under common law must be a contract. The cases cited by IMSCO are readily distinguishable because they concern federal conventions, New York state law concepts, or contracts expressly covering downstream third parties—none of which are relevant here. *See, e.g.*, *Lerakoli, Inc. v. Pan Am. World Airways, Inc.*, 783 F.2d 33, 35–37 (2d Cir. 1986) (relying on state law principles and the Warsaw and Lausanne Conventions to extend limitation to an agent of the USPS); *Leather's Best, Inc. v. Tidewater Terminal, Inc.*, 346 F. Supp. 962, 963, 967–68 (S.D.N.Y. 1972) (holding that a Himalaya clause limitation present in the bill of lading would comport with state law). None of these cases support IMSCO's suggestion that we gloss over the express terms of the LSA and extend the liability limitation to insulate it from all liability in this matter.[4]

## CONCLUSION

For the reasons set forth above, IMSCO's motion is denied.

SO ORDERED:

_____
Marvin E. Aspen
United States District Judge

Dated: Chicago, Illinois
       August 31, 2011

---

[4] IMSCO does not argue that the terms of the SSA limit its liability.